**Andrew Pitts, Pro Se**
Fed.Reg.No. 66004-060
FCI Loretto
P.O. Box 1000
Cresson, PA 16630



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 13 2024

CLERK, U.S. DISTRICT COURT
By _____
Deputy

United States District Court
Northern District Of Texas
Fort Worth Division

Andrew Pitts,  )
    Plaintiff,  )
          )
Vs.  )        Case No: _____
          )
United States of America,  )    **4-24CV-772-O**
    Defendant(s).  )
          )

# CIVIL COMPLAINT
## Pursuant to the Federal Tort Claims Act
## 28 U.S.C. §1346(b)

1. **COMES NOW, Andrew Pitts**, Plaintiff, Pro Se, hereby submits this civil complaint, pursuant to the **Federal Tort Claims Act, 28 U.S.C. §1346(b).**

### Jurisdiction

2. This court has jurisdiction over the Plaintiff's claim(s) that are asserted against the Defendant United States of America, on the grounds that the claim(s) are asserted pursuant to the **Federal Tort Claims Act.** This court has subject matter jurisdiction over these claims pursuant to **28 U.S.C. §1346(b).**

3. This court also has supplemental jurisdiction over all other claim(s) asserted in this complaint under **28 U.S.C. §1367(a)**, because they are also related to the claim(s) asserted against the

-Civil Complaint Page 1 -

Defendant, United States of America, that they form part of the same case or controversy under **Article III** of the **United States Constitution**.

## Parties to the Complaint

4. **Plaintiff: Andrew Pitts** is the Plaintiff. Federal Register Number 66004-060. He is currently in the care and custody of the Federal Bureau of Prisons. The Plaintiff is currently housed at Federal Correctional Institution Loretto, P.O. Box 1000, Cresson, PA 16630.

5. **Defendant: United States of America.** C/O Attorney General of the United States, 950 Pennsylvania, NW, Washington, D.C. 20530. The individual staff members involved in this case are employees of the United States of America. These individuals used the power of their office, position, had knowledge of and/or took actions that resulted in the lifelong disability to the Plaintiff. The United States of America violated the duty of care it owed to the Plaintiff.

## Exhaustion of Administrative Remedies

6. The Administrative Tort Claim addressed the subject matter of this complaint. This claim was given a claim number of TRT-SCR-2022-04786.

7. The Plaintiff received a response to the Administrative Tort Claim TRT-SCR-2022-04786 on February 27, 2024 denying the claim. See attached letter (Exhibit A).

## Basis of the Claim

## Defendant United States of America

8. By statute, the Bureau of Prisons, under the direction of the Attorney General, shall provide suitable care of all persons convicted of offenses against the United States. See **18 U.S.C. §4042(a)(2).**

9. On March 10, 2021 the Plaintiff was attempting to climb down from the top of his assigned living quarters when the plastic chair provided by the facility slipped out from under him

causing him to fall on his right side. The facility does not provide ladders to access the top bunk. Inmates are required to rely on flimsy plastic chairs to climb in and out of the top bunk.

10. The Plaintiff was seen by Vander Olden APRN-CNP on the housing unit. The pain level was recorded at a 9 out of 10. It was determined that the Plaintiff was to be transported to the local hospital to be seen in the emergency room.

11. The local hospital diagnosed the Plaintiff's injury as a closed fracture of the proximal end of his ulna, and placed on a higher dose of Meloxicam. It was noted that the Plaintiff would require a follow up visit with orthopedics.

12. On March 12, 2021 the Plaintiff was seen by CNP Olden for a follow up on his injury. The Plaintiff reported a lot of pain making it hard to sleep. The Plaintiff was given a prescription for Tylenol 3.

13. On March 15, 2021 the Plaintiff was seen by Rhonda Edmondson for a Clinical Encounter on the housing unit. In the Administrative Note Ms. Edmondson noted that the Federal Bureau of Prisons was under modified operations with a reduction in movement associated with the COVID-19 pandemic restrictions. It was also noted that the Plaintiff was supposed to see the orthopedic on March 22, 2021. His prescription for Tylenol #3 was extended to help manage the pain.

14. On March 18, 2021 the Plaintiff was seen by Theresa Stenmark APRN-C/SCR on the housing unit. The Plaintiff complained of pain rated at 9 out of 10, sharp pain, swelling and decreased range of motion. The Plaintiff's pain medication was renewed.

15. On March 22, 2021 the Plaintiff was seen by Traci Carney, DO an orthopedic specialist in Health Services. Dr. Carney noted that the Plaintiff needed open reduction and internal fixator

surgery on the right elbow as soon as possible. The target date for the surgery was March 25, 2021.

16. On March 25, 2021 the Plaintiff was transport to the Southwest Surgery Center for surgery. Implants and a hinge was surgically placed in the elbow. The implants and hinge were to be removed in 4 to 6 months.

17. On April 2, 2021 the Plaintiff's pain medication was renewed due to the chronic unrelenting pain.

18. On April 19, 2021 the Plaintiff was seen by Orthopedic Specialist Mason, PA-C. The specialist recommended flexion extension brace, needs hardware removed in 4 months post operative, Keflex 500mg and adjust pain medication per Dr. Carney. It was also stated that the Plaintiff may transfer to next prison, but will need hardware removed at designated prison.

19. On April 21, 2021 the Plaintiff was seen by CNS Hopkins. It was noted that the Plaintiff's surgical site was infected and medication was started.

20. On April 23, 2021 the Plaintiff's sutures where removed. Serosanguineous drainage was noted.

21. On April 27, 2021 the Plaintiff once again complained of his chronic unrelenting pain in his elbow. RN Kaci Hughes noted the ongoing infection at the surgical site.

22. On May 11, 2021 the Plaintiff once again complained of the unrelenting pain and requested continuation of his pain medication. Tylenol 3 was prescribed.

23. On May 13, 2021 Dr. Carney ordered x-rays of the Plaintiff's elbow.

24. On May 20, 2021 the Plaintiff was transferred to Federal Medical Center in Fort Worth, Texas. This transfer was for the purposes of treating the issues with his right elbow.

25. On May 24, 2021 the Plaintiff was seen by Charles Eilert, DO. Dr. Eilert submitted a request for in house physical therapy, with it being noted that it was an urgent priority. Dr. Eilert also

submitted a request for an in house orthopedic surgical consult. This request was submitted as an routine priority with a target date of July 31, 2021.

26. On May 26, 2021 the Plaintiff was seen by Occupational Therapy Specialist Gayle. Discussion was had concerning previous therapy for his elbow, and future goals. Occupational Therapist Gayle noted that the Plaintiff's arm was dangling at his side, hand had moderate swelling and that the shoulder was internally rotated.

27. On June 7, 2021 the Plaintiff complained because he is supposed to be on the first floor, that he has an alternate institutional shoe pass, and that he was not medically cleared for work. PA Been stated that the Plaintiff does not currently meet the medical criteria for a first floor pass at FMC Fort Worth, that the Plaintiff would have to receive a diabetic foot screening to see if he meets the criteria for an alternate institutional shoe pass and that he has been medically cleared to work on the compound.

28. On June 7,2021 the Plaintiff was seen in Rehabilitation Services by C. Johnson, PT, DPT. It was noted that "requests submitted by previous institution will be discontinued at this time. New consultation requests have been submitted by providers at FMC Fort Worth as appropriate for patient."

29. On June 22, 2021 the Plaintiff attended sick call and was seen by FNP Frykman. The Plaintiff complained of the chronic pain in his right arm. FNP Frykman instructed that the Plaintiff by Ibuprofen from commissary.

30. On August 6, 2021 the Plaintiff was seen by Occupational Therapist Gayle. The Plaintiff complained of loss of joint motion and consistency of care. The Plaintiff was also advised that the Orthopedic Clinic for his follow up had been postponed.

31. On August 9, 2021 Occupational Therapist Gayle entered an Administrative Note changing the Plaintiff's in-house ortho consult to a off site Orthopedist consult to expedite care and provide further clarification on weight bearing restrictions.

32. On September 3, 2021 the Plaintiff was seen by Dr. Wagner, Orthopedist. Dr. Wagner stated "At this point, I would recommend this hinge be removed. This may help him regain further range of motion and therefore would be important to try to remove this in the near future to try to help him work on his therapy and try to get better ultimate range of motion." Dr. Wagner also stated that "At this point, JPS is not scheduling elective surgery. I think this surgery would be better performed sooner rather than later. Therefore, it might need to be performed at another outside hospital."

33. On September 8, 2021 the Plaintiff fell because his right leg gave out. He was seen by Dr. Eilert in Health Services. Dr. Eilert noted a dislocated laterally displaced right patella, and that the Plaintiff was unable to flex or extend his right knee. The Plaintiff was sent to JPS Hospital for further evaluation.

34. On September 8, 2021 the Plaintiff was admitted to the emergency room at JPS Hospital. It was determined that the Plaintiff a right tib plateau fracture.

35. On September 9, 2021 the Plaintiff underwent surgery to repair the damage done in his knee. Following surgery, the Plaintiff was admitted to the hospital noting that "FMC unable to care for" the Plaintiff.

36. On September 13, 2021 Dr. Matewere entered an administrative note in the Plaintiff's medical file reporting the report from JPS Hospital.

37. On September 17, 2021 Dr. Serigo Mercado entered an Administrative Note in the Plaintiff's medical file further updating the reports from JPS Hospital. After 7 days in JPS Hospital the

Plaintiff was transferred to Kindred SW Hospital. It was noted that the care the Plaintiff required was "too complex for available resources at the FMC. Will transfer back to FMC when able to assume care."

38. On September 24, 2021 the Plaintiff was transferred back to FMC Fort Worth and was admitted to the medical unit for a short stay and to quarantine for COVID-19 protocols

39. On October 12, 2021 Dr. Tubera entered an Administrative Note addressing the final diagnosis from the hospital. One of which was severe physical debilitation.

40. On October 12, 2021 the Plaintiff was seen by Occupational Therapist Gayle. It was noted that "imaging reveals complete posterior dislocation of the radial head with undetermined chronicity. Postsurgical changes."

41. On October 21, 2021 Dr. Eilert entered an Administrative Note regarding the abnormal x-ray and the need for a follow up with Orthopedic Clinic.

42. On November 12, 2021 Dr. Eilert entered an Administrative Note. He noted that the Plaintiff was seen in the Orthopedic Clinic in October and that the right elbow internal fixator needed removed and that the surgery was pending.

43. On November 9, 2021 C. Gayle, Occ Therapy noted that the Plaintiff's updated imaging revealed lucency surrounding hardware indicated lossening. It was also noted that "In light of apparent hardware loosening and recommendation for hardware removal 'ASAP'."

44. On November 12, 2021 Dr. Eilert submitted new consultation requests. First for a DEXA scan. Second for an in house orthopdeic surgical consult. And, third for occupational therapy after the Plaintiff has his right elbow hardware removed.

45. On December 9, 2021 the Plaintiff attended sick call and was seen by FNP Frykman. The Plaintiff complained that he thought the hardware piece snapped in his right arm. X-rays were ordered.

46. On December 9, 2021 the Plaintiff had x-rays taken of his right elbow. The report noted that the loosening hardware was a concern. It further noted that "No hardware appears stable. Posteriorly dislocated radial head. Axillary rotated position of the distal humerus at the elbow joint level. Chronic calcific densities distal to the coronoid level largest measuring 8x7 mm, likely chronic fracture fragments."

47. On January 13, 2022 the Plaintiff was seen by Ashley Schwartz, PA on the housing unit for a sick call encounter. The Plaintiff complained of increasing redness and warmth in his right elbow. He also complained of swelling in his right hand and fingers. PA Schwartz referred to the December 9, 2021 x-ray report.

48. On January 18, 2022 the Plaintiff was seen by FNP Frykman. The Plaintiff was once again complaining of the swelling and redness in his right elbow and hand. X-rays ordered once again.

49. On January 20, 2022 the Plaintiff was transported for a bone density scan.

50. On January 21, 2022 the Plaintiff had x-rays taken of his right elbow. Once again, it was noted that "No hardware appears stable. Posteriorly dislocated radial head. Axillary rotated position of the distal humerus at the elbow joint level. Chronic calcific densities distal to the coronoid level largest measuring 8x7 mm, likely chronic fracture fragments."

51. On January 24, 2022 the Plaintiff attended sick on the housing unit. The Plaintiff was seen by PA Schwartz. It was noted that there was localized fluctuant cystic region overlying olecranon without drainage. Referred to January 21, 2022 x-ray report.

52. On January 25, 2022 Dr. Eilert entered an Administrative Noted stating that he "will discuss with trip coordinator as to when patient will have elbow surgery."

53. On February 1, 2022 the Plaintiff attended sick call with complaints regarding his right elbow issues. Plaintiff was seen by PA Schwartz. It was noted once again that x-rays show loosening of hardware, no hardware appears stable, posteriorly dislocated radial head and chronic calcific densities distal to the coronoid level largest measuring 8x7 mm (likely chronic fracture fragments).

54. On February 15, 2022 the Plaintiff attended sick call complaining of pain in his right elbow. The Plaintiff was seen by PA Schwartz. Previous x-rays were once again noted and referred to.

55. On March 7, 2022 Dr. Mercado entered an Administrative Note into the Plaintiff's medical file. Dr. Mercado states that the Plaintiff was seen by the on site Orthopedist who recommended off site right elbow hinge removal. And that per JPS Hospital scheduling this can not be scheduled until the Plaintiff is seen offsite by JPS ortho/trauma first. A new consultation for Orthopedic Surgery was requested with a target date of March 31, 2022, and a priority of urgent.

56. On March 22, 2022 the Plaintiff attended sick call and was seen by PA Been. The Plaintiff was requesting more antibiotics for his right elbow. He was also complaining of the pain in his right elbow.

57. On March 25, 2022 the Plaintiff was transported to the JPS Hospital Orthopedic Trauma Clinic. X-rays show chronic dislocation of elbow. It was explained that surgical intervention and hardware removal will not likely improve function of elbow. Dr. Tyler Caton stated that they "will plan for HWR, EUA and possible soft tissue reconstruction with possible addition of

external fixation." Dr. Caton also stated that the care provided was medically necessary and that the prescribed treatment is appropriate.

58. On March 29, 2022 the Plaintiff attended sick call and was seen by PA Been. The Plaintiff's was complaining of the pain in his right elbow. PA Been noted in the file that the Plaintiff requires a complete reconstruction of his right elbow.

59. On March 30, 2022 PA Been entered a new consult request for an in house orthopedic surgical consult with a target date of July 29, 2022.

60. On April 15, 2022 the Plaintiff attended sick call and was seen by PA Been. The Plaintiff was complaining of pain.

61. On June 17, 2022 the Plaintiff attended sick call and was seen by PA Been. The Plaintiff was complaining of the pain in his right elbow.

62. On June 23, 2022 the Plaintiff was seen by PA Been at sick call. The Plaintiff complained that his right elbow popped and was passing blood. PA Been did note that "This patient has been approved for surgery on his right elbow several weeks ago. However, due to limited on site inpatient bed space which this patient will need for post-op rehab, the BOP has delayed the date of the surgery until bed space is available."

63. On June 28, 2022 the Plaintiff reported to sick call and was seen by PA Been. The Plaintiff presented with a band aid covering his wound and drainage leaking down his right forearm. Plaintiff stated that when the nurse covers the wound with a large band aid, it leaks and the he needs to change it at least twice daily.

64. On July 5, 2022 the Plaintiff attended sick call and was seen by PA Been. The Plaintiff was complaining that the dressings the nurses have been applying have been to small and does not contain the drainage from his elbow.

65. On July 18, 2022 the Plaintiff reported to sick call and was seen by PA Been. Plaintiff was once again complaining of the drainage from his right elbow, and the need for more supplies to keep up on dressing changes.

66. On August 15, 2022 the Plaintiff attended sick call and was seen by PA Been. The Plaintiff was complaining that his right elbow was still draining and infected.

67. On September 9, 2022 the Plaintiff was seen by Dr. Wagner, Orthopedist. Dr. Wagner once again stated that "I believe it is indicated to remove the hardware both to decrease his pain and possibly increase his range of motion and hopefully to get rid of the infection since this is draining and has the halos around the screws. This can be scheduled with me as the surgeon for removal of the hinge and also for the irritation and debridement. I believe this should be done as soon as possible."

68. On September 12, 2022 the Plaintiff attended sick call and was seen by PA Been. The Plaintiff complained of drainage from his right elbow and increased pain at the surgical site.

69. On September 30, 2022 the Plaintiff attend sick call and was seen by PA Been. The Plaintiff was once again complaining of the drainage from his right elbow, and the radiating pain from the site.

70. On October 4, 2022 the Plaintiff attended sick call and was seen by FNP Egbuji. The Plaintiff was complaining of the drainage from his infected right elbow and the it was causing him pain.

71. On October 19, 2022 the Plaintiff was transported to JPS Hospital to have surgery on his right elbow.

## Federal Tort Claims Act

72. The failure, and/or omission, of the United States of America to provide proper, and/or timely, medical treatment was/is negligent. The United States of America, through the Federal Bureau of Prisons, violated the duty of care that it owes the Plaintiff. The Plaintiff was damaged by this violation. The Federal Bureau of Prisons has/had a duty to provide medically necessary treatment in a reasonable and prudent manner.

73. By statue, the Federal Bureau of Prisons, under the direction of the United States Attorney General, shall provide suitable care of all persons convicted of offense(s) against the United States of America. See **18 U.S.C. §4042(a)(2)**.

74. Under the laws of the State of Texas, a private person would be liable to the Plaintiff for failure to provide proper medical care in a prudent manner. Thus, under **28 U.S.C. §2674**, the United States of America is liable to the Plaintiff for the damages resulting from the United States of America's negligence in this matter.

## Damages

75. As a result, and proximate cause, of the Defendant(s) negligence and medical malpractice, the Plaintiff suffered the following damages:

    a.  Physical Pain and Mental Anguish,

    b.  Disfigurement in the Past and Future,

    c.  Physical Impairment in the Past and Future,

    d.  Medical Expenses in the Future.

## Relief Requested

### Defendant United States of America

76. The Plaintiff requests the following relief from the Defendant United States of America:

A.  Award damages in the following amounts in U.S. Dollars:

Pain and Suffering –

(1) Past -                                          $        50,000.00

For having to suffer with the pain of having an infected and immoveable elbow.

(2) Future -                                        $        50,000.00

For having an immoveable elbow and the possible surgeries to repair the damage.

Medical Costs –

(1) Past -                                          $            0.00

(2) Future –                                        $        50,000.00

To cover future visits to various specialist, surgeons, rehabilitation specialist, evaluation and treatments.

Emotion and Psychological Injury –

(1) Past -                                          $        50,000.00

(2) Future -                                        $        50,000.00

**Total Damages United States of America -**          $        **250,000.00**

B.  Grant such other relied as it may appear that the Plaintiff is entitled.

## Declaration

77. The Plaintiff, **Andrew Pitts,** hereby swears that the statements made in this Complaint are true and correct to the best of his knowledge. This declaration is made under penalty of perjury pursuant to **28 U.S.C. §1746(2).**

**RESPECTFULLY  SUBMITTED** this **8th** day of **August, 2024.**

Andrew Pitts, Pro Se

# Exhibit A



United States Department
Federal Bureau of Prisons
South Central Regional Office
U.S. Armed Forces Reserve Complex
344 Marine Forces Drive
Grand Prairie, Texas 75051

Date Mailed: February 27, 2024

CERTIFIED MAIL
7020 0640 0001 5079 9653

Andrew Pitts
Register No. 66004-060
FCI Loretto
P.O. Box 1000
Cresson, PA 16630

Re:    Pitts, Andrew; Register No. 66004-060
Administrative Tort Claim No. TRT-SCR-2022-04786

Mr. Pitts:

Your claim has been considered for administrative settlement under the Federal Tort Claims Act (FTCA) 28 U.S.C. § 2672, *et seq.*, and authority granted by 28 C.F.R. § 0.172.

Section 2676 of the Federal Tort Claims Act delegates to each federal agency the authority to consider, determine and settle any claim for money damages against the United States for loss of personal property or injury caused by the negligent or wrongful act or omission of any employee of the agency acting within the scope of his office or employment.

You claim that on March 10, 2021, while housed at the Federal Transfer Center (FTC) Oklahoma City, Oklahoma, you requested a bottom bunk pass from a nurse. You claim you never heard back. You claim that you then used a chair to get up and down from your bunkbed, and that the chair slid from under you. You claim you fell, causing you to hit your right arm and right elbow. You claim a nurse then responded and told you she had given you a bottom bunk pass but had failed to tell anyone. You claim you suffered a dislocated elbow, broken right arm, and that you had hardware installed. You seek $5,000,000 in compensation.

Pitts, Andrew: Register No. 66004-060
Administrative Tort Claim No. TRT-SCR-2022-04786

An investigation found your claim of injury unsupported by the evidence. Records indicate that you did fall on March 10, 2021, however, the records do not indicate that the fall was the result of negligence by BOP staff.

The investigation revealed that you have not suffered a loss of personal property or injury caused by the negligence of an employee of the United States acting within the scope of employment. Therefore, your claim is denied.

You are advised that if you are dissatisfied with the determination in this matter, you are afforded six (6) months from the date of the mailing of this communication within which to bring suit in the appropriate United States District Court.

Sincerely,

Jason A. Sickler
Regional Counsel

cc: M. Underwood, Warden
    FCI Loretto

    K. Zook, Warden
    FTC Oklahoma City

